UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TREK ARMOR INC., d/b/a
BARTACT, INC.,

              Plaintiff,                            Case No. 2:23-cv-12894

v.                                          Honorable Susan K. DeClercq
                                            United States District Judge

FCA US LLC,

              Defendant.

_____/

**OPINION AND ORDER CONSTRUING DISPUTED CLAIM TERM AND
DIRECTING PARTIES TO SUBMIT JOINT PROPOSED SCHEDULE AND
ATTEND SCHEDULING CONFERENCE**

At the center of this patent-infringement case is a dispute about the meaning

of the word "on." Plaintiff Trek Armor, Inc., doing business as Bartact, Inc., alleges

that Defendant FCA US LLC (FCA) infringed on Trek Armor's patent protecting a

vehicle seat with "an accessory assembly *on* the rear back portion." ECF No. 41-2

at PageID.750 (emphasis added). At this claim-construction stage, FCA alleges that

the word "on" should be construed to mean an accessory assembly "physically in

contact with and supported by, but [] not form[ing] a part of, the rear back portion

of the [vehicle] seat." ECF No. 33 at PageID.608. Trek Armor, on the other hand,

argues "on" needs no construction and is sufficiently clear by itself. *See* ECF Nos.

28; 34.

But, as explained below, both Parties miss the mark to some extent. Indeed, contrary to Trek Armor's position, not construing "on" would result in ambiguities that could confuse a jury. But part of FCA's construction is not supported by the intrinsic evidence. Thus, this Court will construe the disputed claim term so that it is clear that the use of "on" means that the accessory assembly is structurally separate from but physically in contact with the rear back portion of the vehicle seat.

## I. BACKGROUND

The patent dispute in this case relates to vehicle seats with storage compartments. Trek Armor alleges that FCA infringed on two of its patents: the '301 Patent and the '836 Patent.

### A. The '301 and '836 Patents

On June 4, 2019, the United States Patent and Trademark Office (USPTO) issued the '301 Patent. ECF No. 41-2; *see also* ECF No. 41 at PageID.711. Over four years later, the USPTO issued Patent '836. ECF No. 41-3; *see also* ECF No. 41 at PageID.719. However, both "patents share a common specification," ECF No. 33 at PageID.606 n.2, as the '301 Patent is the "parent patent" of the '836 patent, ECF No. 28 at PageID.320 n.3. And the only disputed claim term—an accessory assembly *on* the rear back portion—is the same in both. *See* ECF Nos. 41-2 at PageID750; 41-3 at PageID.768.

The '301 Patent contemplates a "vehicle seat with storage capacity," ECF No.

41-2 at PageID.734, and discloses several different embodiments of such seats for different types of vehicles with different types of storage compartments, *see generally id.* at PageID.736–45.

As relevant to this dispute, Claim 1 of the '301 Patent is:

1. A seat for use with a vehicle, the seat comprising:

> [a]  a seat frame;
> [b]  a cushioning material positioned adjacent to the seat frame;
> [c]  an outer cover positioned over the seat frame and the cushioning material to form a base and back portion, wherein the back portion includes a front back portion and a rear back portion; [and]
> [d]  **an accessory assembly on the rear back portion** and coupled to at least one of the seat frame and the rear back portion[.]

*Id.* at PageID.750 (emphasis added). The '301 Patent then goes on to describe the "accessory assembly" in detail, and sets forth ten dependent claims that are all different embodiments of Claim 1. *Id.*

Similarly, Claim 1 of the '836 Patent is:

1. A seat for use with a vehicle, the seat comprising:

> [a]  a base portion and a back portion, wherein the back portion includes a front back portion and a rear back portion; and
> [b]  **an accessory assembly on the rear back portion**, wherein the accessory assembly is secured to the rear back portion by bolts or screws[.]

ECF No. 41-3 at PageID.768.

Figures 3 and 4, reproduced below, are exemplary embodiments of Claim 1 for a motorcycle or scooter:



FIG. 3          FIG. 4

*See* ECF No. 41-2 at PageID.738–39.

Figure 6, reproduced below, is a rear view of the exemplary embodiment of a seat for use with a vehicle:



FIG. 6

*See Id.* at PageID.471.

Figures 7 and 8, reproduced below, are rear views of exemplary embodiments of vehicle seats with two different retrofit accessory assemblies for storage as

- 4 -

asserted in Claim 1:



See id. at PageID.472–73.

## B. Procedural History

In November 2023, Trek Armor sued FCA, alleging FCA infringed upon the '301 and '836 Patents by using the same vehicle seats with storage compartments in at least three Jeep vehicles after seeing Trek Armor's vehicle seats.[1] ECF No. 1.

Although the Parties initially disputed several terms for claim construction, see generally ECF Nos. 26; 28; 30; 33–35, all but one of those disputes were resolved by the Parties. See ECF No. 45 at PageID.793 (clarifying that the Parties are "down

---

[1] Just over a year later, Trek Armor filed an amended complaint adding a third patent-infringement claim, alleging FCA infringed upon a third related patent. ECF No. 18. But in January 2025, the Parties stipulated to allow Trek Armor to file a second amended complaint "for the sole purpose of withdrawing with prejudice all claims of patent infringement" with respect to the third patent claim. See ECF No. 40; 41. Thus, only the '301 and '836 Patents remain at issue.

to one" claim-construction dispute). Thus, the only remaining dispute relates to the construction of Claim 1 for both patents, specifically the description that contemplates an accessory assembly *on* the rear back portion of the vehicle seat. *Id.*; *see also* ECF No. 28 at PageID.322. The Parties fully briefed the issue, *see* ECF Nos. 28; 33; 34, and a *Markman* hearing on the issue was held on February 28, 2025. *See* ECF No. 45. A second hearing was held in June 2025, *see* ECF No. 47, after the Court issued an order asking the Parties to address "four issues relating to the claim language, specification language, and embodiments" of the patents at issue. ECF No. 46 at PageID.835.

## II. LEGAL STANDARD

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.,* 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.,* 381 F.3d 1111, 1115 (Fed. Cir. 2004)). In patent-infringement cases, a court's first task "is to construe the claims to ascertain their proper scope." *Ravin Crossbows, LLC v. Hunter's Mfg. Co.*, No. 5:23-cv-598, 2024 WL 895156, at *2 (N.D. Ohio Mar. 1, 2024) (citing *Lockhead Martin Corp. v. Space Systems/Loral, Inc.*, 324 F.3d 1308, 1318 (Fed. Cir. 2003)). This process— called "claim construction"—is a question of law to be determined by the Court. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 384 (1996).

The purpose of claim construction is "neither to limit nor to broaden the claims, but to define, as a matter of law, the invention that has been patented." *Netword, LLC v. Centraal Corp.,* 242 F.3d 1347, 1352 (Fed. Cir. 2001). Indeed, a court has two primary goals in construing the disputed claim terms: (1) to determine the scope of the patented invention by interpreting the disputed claim terms to the extent needed to resolve the dispute between the Parties; and (2) to provide a construction that will be understood by the jury, which might otherwise misunderstand a claim term in the context of the patent specification and prosecution history of the patent. *See, e.g., Power-One, Inc. v. Artesyn Techs., Inc.*, 599 F.3d 1343, 1348 (Fed. Cir. 2010) ("The terms, as construed by the court, must ensure that the jury fully understands the court's claim-construction rulings and what the patentee covered by the claims.") (cleaned up).

When construing claims, a court determines whether a term requires construction. *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997) (noting that claim construction "is not an obligatory exercise in redundancy[,] [a]lthough claim construction may occasionally be necessary [even] in obvious determinations"). "The Court need not accept either party's construction of a disputed term." *Evenflo Co. v. Veer Gear LLC*, No. 3:20-cv-030, 2022 WL 17252215, at \*1 (S.D. Ohio Nov. 28, 2022) (citing *Bancorp Servs., LLC v. Sun Life Assurance Co. of Canada (U.S.)*, 687 F.3d 1266, 1274 (Fed. Cir. 2012)).

Upon determining that claim construction is necessary, courts may make subsidiary factual findings necessary to construe the claim. *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 332 (2015). But once the court has determined the scope of the patent, it is then up to the jury to decide whether a patent infringement has occurred. *Markman*, 517 U.S. at 384.

When constructing a patent claim, "[t]he appropriate starting point . . . is always with the language of the asserted claim itself." *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1186 (Fed. Cir. 1998). But the claims also "must be read in view of the specification, of which they are a part." *Phillips*, 415 F.3d at 1315 (quoting *Markman*, 52 F.3d at 979). Accordingly, courts begin by examining intrinsic evidence of record: (1) the claim language, (2) the patent specification, and (3) any prosecution history. *See id.* at 1313; *see also Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). "Such intrinsic evidence is the most significant source of the legally operative meaning of disputed claim language." *Vitronics Corp.*, 90 F.3d at 1582.

In most circumstances, analysis of the intrinsic evidence alone will resolve claim construction disputes. *See Vitronics*, 90 F.3d at 1583. However, courts may consider extrinsic evidence—such as expert and inventor testimony, dictionaries, and learned treatises—"to ensure that the claim construction it is tending to from the patent file is not inconsistent with clearly expressed, plainly apposite, and widely

held understandings in the pertinent technical field." *Pitney Bowes, Inc. v. Hewlett–Packard Co.*, 182 F.3d 1298, 1309 (Fed. Cir. 1999) (citing *Vitronics*, 90 F.3d at 1585). But courts should not rely on extrinsic evidence in claim construction to contradict the meaning of claims discernable from examination of the claims, the written description, and the prosecution history. *See id.* Indeed, all extrinsic evidence should be evaluated in light of the intrinsic evidence. *Phillips*, 415 F.3d at 1319.

### III. ANALYSIS

In this case, the Parties dispute the meaning of a single, two-letter word in the first claim term: "on." *See* ECF No. 41-2 at PageID.750. Recall, Claim 1 of the '301 Patent is:

> 1. A seat for use with a vehicle, the seat comprising:
>
> > [a]  a seat frame;
> > [b]  a cushioning material positioned adjacent to the seat frame;
> > [c]  an outer cover positioned over the seat frame and the cushioning material to form a base and back portion, wherein the back portion includes a front back portion and a rear back portion; [and]
> > [d]  **an accessory assembly on the rear back portion and coupled to at least one of the seat frame and the rear back portion[.]**

*Id.* (emphasis added).

And Claim 1 of the '836 Patent is:

> 1. A seat for use with a vehicle, the seat comprising:
>
> > [a]  a base portion and a back portion, wherein the back portion includes a front back portion and a rear back portion; and

> [b] **an accessory assembly on the rear back portion**, wherein
> the accessory assembly is secured to the rear back portion by
> bolts or screws[.]

ECF No. 41-3 at PageID.768 (emphasis added).

As a threshold issue, this Court must determine whether claim construction is necessary. *See U.S. Surgical Corp.*, 103 F.3d at 1568. Here, Trek Armor asserts that Claim 1 requires no construction because the language used defines the scope of the claim with clarity. *See* ECF Nos. 28; 34. FCA, on the other hand, asserts claim construction is necessary because the word "on" lacks precision. *See* ECF No. 33 at PageID.608. To that end, FCA argues that the fourth element (in bold) should be construed to clarify that "an accessory assembly *on* the rear back portion" means that "[t]he accessory assembly is physically in contact with and supported by, but does not form part of, the back portion of the seat." *Id.* Trek Armor Trek Armor contends that "on"—as used in Claim 1—"can indicate a 'position *in*'" the rear back portion of the seat—not merely physically atop of it. ECF No. 28 at PageID.325 (emphasis in original).

This Court agrees with FCA that construction is necessary because the Parties appear to have "a fundamental dispute regarding the scope of a claim term." *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008). Indeed, the Parties' dispute about the word "on" comes down to whether the claim language means that the accessory assembly must be *physically atop* the rear

back portion of the seat, or whether it may also be *in* or *a part of* the rear back portion of the seat. *See* ECF No. 45 at PageID.805. "This dispute over the scope of the asserted claim[] is a question of law," this Court must decide at this stage. *O2 Micro*, 521 F.3d at 1361.

Having determined that construction is necessary, this Court now turns to the question of how to construe the disputed claim language. That is, what does "on" mean within Claim 1 of both patents? This question invokes two issues: (1) Does "on" mean that the accessory assembly must be atop the rear back portion of the seat, or does "on" mean the accessory assembly may be *inside* the rear back portion of the seat; and (2) Does "on" contemplate the accessory assembly being *a part of* the rear back portion of the seat? To answer these questions, this Court will begin— as it must—with the intrinsic evidence of both the '301 and '836 Patents.

### A. Atop or Inside

The first part of the Parties' dispute over the word "on" involves whether "on" limits the method and location of attachment to being *atop*—as opposed to inside— the rear back portion of the seat. For an entity to be atop another suggests multiple relationships between those entities: that they could but do not have to be making physical contact, that one supports another, and that the entity being supported is above or external to the entity doing the supporting. *See generally Cat Tech Inc. v. Tubemaster, Inc.*, No. H-05-3050, 2006 WL 6112209, *5 (S.D. Tex. Oct. 30, 2006)

- 11 -

(discussing the meaning of the phrase "on top of"). For an entity to be inside another, the relationship there suggests that one entity contains or surrounds the other. *See generally Zen Design Grp. Ltd. V. Scholastic, Inc.*, No. 16-12936, 2018 WL 1750978, at *3–5, 4 n.3 (E.D. Mich. Apr. 11, 2018) (addressing the meaning of "inside"). In most likely scenarios, for an entity to be inside another, the entities must make physical contact or have a supportive relationship.

But here, neither the '301 nor '836 Patents include language suggesting the accessory assembly must be physically in contact with *and supported by*—i.e., atop—the rear back portion of the vehicle seat. Several pieces of intrinsic evidence support this conclusion.

First, looking to the '301 Patent, the body of the claim explicitly contemplates how the accessory assembly is attached to the vehicle seat and acknowledges several points of attachment. The body explains that the accessory assembly on the rear back portion of the seat is "coupled to at least one of the seat frame and the rear back portion." ECF No. 41-2 at PageID.750. In this way, the claim language contemplates an accessory assembly that could be attached *only* to the seat frame—which is beneath the cushioning material and outer cover—thus suggesting that the accessory assembly, if attached to the seat frame only (or perhaps the seat frame and the outer cover), *could* be *inside* the rear back portion of the vehicle seat, not merely *atop of* it.

Looking to the '836 Patent, which contemplates a vehicle seat with no cushioning or outer cover, this patent language also suggests the accessory assembly does not necessarily have to be *atop* the rear back portion of the seat. In the '836 patent, Claim 1 describes a vehicle seat with "a base portion and a back portion, wherein the back portion includes a front back portion and a rear back portion; and an accessory assembly on the rear back portion, wherein the accessory assembly is secured to the rear back portion by bolds or screws." ECF No. 41-3 at PageID.768. There is no language suggesting the accessory assembly must be *atop* and may not be attached *inside* the rear back portion of the vehicle seat. For example, a molded plastic rear back portion could contain a hollow that would allow an accessory assembly to be secured to the *inside* of the rear back portion and lay flush with the rear back portion.

FCA's proposed construction necessarily assumes that the rear back portion is always a fully intact piece, and that the accessory assembly must rest upon it using some sort of securement. However, if that were the case, it would seem that the claim language could simply have stated that the accessory assembly needed to be "coupled to" or "secured to" the rear back portion. Indeed, such language is used in the very next clause of the claim language in both the patents. *See* ECF Nos. 41-2 at PageID.750 ("[A]n accessory assembly on the rear back portion and coupled to at least one of the seat frame and the rear back portion."); 41-3 at PageID.768 ("[A]n

accessory assembly on the rear back portion, wherein the accessory assembly is secured to the rear back portion by bolts or screws."). Thus, the patentee's use of the word "on," in this clause, rather than "coupled to" or "secured to," suggests that they have different meanings.

In sum, the intrinsic evidence does not impose a limitation that the accessory assembly must be atop or exclusively supported by the rear back portion of the seat. Indeed, the language allows that the accessory assembly could be located *inside* the rear back portion of the seat. Accordingly, this Court will construe the claim language to comport with this principle.

### B. A Part Of

The second part of the Parties' dispute is not much of a dispute at all. Indeed, both Parties agreed during the June 2025 *Markman* Hearing that the "accessory assembly" and the "rear back portion" were necessarily two separate, distinguishable pieces. *See* ECF No. 47 at PageID.880 ("[Y]es, they have to be different things. You need separate pieces, something distinguishable[.]"). And this agreement is supported by the claim language, which necessarily contemplates a "[a] seat for use with a vehicle, the seat comprising" a rear back portion *and*—separately—an accessory assembly. *See* ECF Nos. 41-2 at PageID.750; 41-3 at PageID.768. Thus, the principle of the second half of FCA's proposed construction—that the accessory assembly "does not form part of[] the back portion of the seat," ECF No. 33 at

- 14 -

PageID.608—will be adopted.

However, this Court will use different language to convey this principle in order to provide a construction that will be better understood by the jury and not lead to confusion about when two separate, attached parts become "part of" the larger finished product.[2] Instead, to convey the principle that the accessory assembly and the rear back portion of the seat are two separate parts, this Court will clarify that the two parts are "structurally separate."

## C. Final Construction

In sum, this Court will adopt FCA's proposed construction in part to reflect this Court's findings that "an accessory assembly on the rear back portion" refers to the location of the accessory assembly on the overall seat but does not require that the accessory assembly be supported by or atop of the rear back portion of the seat. It will also incorporate the Parties' agreement that the accessory assembly must be a separate component into this construction.

To that end, "an accessory assembly on the rear back portion" as used in Claim

---

[2] Take, for example, a wool sweater with an embroidered monogram. The sweater was not initially made with the thread of the monogram. It was made of wool, and the monogram was later added on. But does that mean the thread of the monogram, once attached to the cardigan, does not form *a part of* the cardigan *ever*? Thus begins the descent into a philosophical exercise of untangling when two pieces attached to one another become a single item, if at all.  To protect jurors from this tangled descent, this Court will provide clarity by using different language—"structurally separate"—to convey the Parties'  agreed-upon conclusion that the accessory assembly is separate from the vehicle seat.

1 of the '301 and '836 Patents will be construed as "an accessory assembly structurally separate from but physically in contact with the rear back portion" of the vehicle seat. As explained above, this construction comports with the claim language and specifications of both patents—which contemplate a separate accessory assembly physically in contact with the rear back portion of the vehicle seat—without limiting *how* that physical contact between the two components occurs so long as it is located somewhere on the rear back portion of the vehicle seat. Moreover, this construction adopts a plain and ordinary meaning of "on," as used in the English language. *See* ECF No. 28-4 at PageID.391 (defining "on" as "a function word to indicate position in or in contact with").

## IV. CONCLUSION

Accordingly, it is **ORDERED** that the disputed claim term is **RESOLVED** as follows:

> "[A]n accessory assembly on the rear back portion" in Claim 1 of the '301 Patent and Claim 1 of the '836 Patent is construed to mean "an accessory assembly structurally separate from but physically in contact with the rear back portion" of the vehicle seat.

> Further, it is **ORDERED** that the Parties are **DIRECTED** to:

> 1. Submit a joint proposed schedule to the Court by e-mail **on or before Tuesday, July 7, 2026**; and

- 16 -

2.  Attend a virtual scheduling conference on **Thursday, July 9, 2026, at 3:00 PM EDT**.

**This is not a final order and does not close the above-captioned case.**

> /s/Susan K. DeClercq
> SUSAN K. DeCLERCQ
> United States District Judge

Dated: June 12, 2026